**RIMAC MARTIN**
A Professional Corporation
ANNA M. MARTIN - State Bar No. 154279
WILLIAM REILLY - State Bar No. 177550
JOSHUA HEAVISIDE - State Bar No. 225715
1051 Divisadero Street
San Francisco, CA 94115
Telephone: (415) 561-8440
Facsimile: (415) 561-8430

Attorneys for Plaintiff
HOMETEAM PEST DEFENSE, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

# *E-FILING*

| | |
|---|---|
| HOMETEAM PEST DEFENSE, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| DAVID WOODMAN, ROBERTO BARON, TIM KATRONES, MICHAEL FAULKENBERRY, MICHAEL ISHAM, GLEN MCCAULEY, SEAN MCCAULEY, DELTA PEST CONTROL, and DOES 1 through 50, inclusive , | ) |
| Defendants. | ) |

**CASE NO. CV 09-1158 JSW**

**AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT, INJUNCTION AND DAMAGES - DEMAND FOR JURY TRIAL**

Plaintiff HOMETEAM PEST DEFENSE, INC. ("Plaintiff" or "HomeTeam"), for its Amended Complaint against defendants DAVID WOODMAN, ROBERTO BARON, TIM KATRONES, MICHAEL FAULKENBERRY, MICHAEL ISHAM, GLEN MCCAULEY, SEAN MCCAULEY, and DELTA PEST CONTROL, (collectively, "Defendants"), alleges as follows:

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

1.    At the time the case was commenced, the citizenship of Plaintiff was diverse from that of Defendants.  Specifically:

-1-

1    (a)    HomeTeam is a corporation organized under the laws of the state of

2  Delaware, with its principal place of business in Texas.  HomeTeam is authorized to do business

3  in California and is doing business in California.

4    (b)    Upon information and belief, David Woodman ("Woodman") is now, and

5  was at all times relevant hereto, an individual residing in California.

6    (c)    Upon information and belief, Roberto Baron ("Baron") is now, and was at

7  all times relevant hereto, an individual residing in California.

8    (d)    Upon information and belief, Tim Katrones ("Katrones") is now, and was

9  at all times relevant hereto, an individual residing in California.

10    (e)    Upon information and belief, Michael Faulkenberry ("Faulkenberry") is

11  now, and was at all times relevant hereto, an individual residing in California.

12    (f)    Upon information and belief, Michael Isham ("Isham") is now, and was at

13  all times relevant hereto, an individual residing in California.

14    (g)    Upon information and belief, Sean McCauley ("Sean") is now, and was at

15  all times relevant hereto, an individual residing in California.

16    (h)    Upon information and belief, Glen McCauley ("Glen") is now, and was

17  at all times relevant hereto, an individual residing in California.

18    (I)    Upon information and belief, Delta ("Delta") is now, and was at all times

19  relevant hereto, a corporation organized under the laws of the state of California, with its

20  principal place of business in California.

21    2.    This Court also has jurisdiction of the instant matter pursuant to 28 U.S.C. § 1331

22  and 15 U.S.C. § 1121 in that the case arises under the Lanham Act, 15 U.S.C. §§ 1501-1127.

23  Plaintiff's state law claims form part of the same case or controversy, and derive from a common

24  nucleus of operative facts as his federal law claims and are therefore within the supplemental

25  jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

26    3.    HomeTeam alleges that the value of the rights that HomeTeam seeks to protect

27  through injunctive relief exceeds $75,000.00, excluding interest and costs.

28  / / /

AMENDED COMPLAINT                                    CASE NO. CV 09-1158 JSW

1      4.      This action is one over which this United States District Court has diversity

2  subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that (a) it is between a citizens of

3  California and a non-resident foreign citizen, and (b) the matter in controversy, exclusive of

4  interest and costs, exceeds the sum of $75,000.

5      5.      Venue is proper in the Northern District of California pursuant to 28 U.S.C.

6  § 1391(a)(2) in that HomeTeam has operations and protectable interests in that Division and the

7  acts complained of herein occurred in that Division, and pursuant to 28 U.S.C. § 1391(a)(1) in

8  that the defendants reside in this judicial district.

9      6.      At all times mentioned herein, all Defendants were the agents, servants, and

10  employees of all other Defendants herein, and were at all times acting withing the scope and

11  course of their agency and employment.

12                                              **FACTS**

13      7.      HomeTeam is a pest control, exterminating, fumigating and termite control

14  business that provides pest control services at customers' residences and businesses, as well as

15  provides services in building construction.

16      8.      HomeTeam through its parent corporation owns Garden Plus Pest Control

17  ("Garden Plus") and has a license to use the Garden Plus trademark.  HomeTeam has used and

18  continues to use the name "Garden Plus" since 2004.

19      9.      HomeTeam has recorded its assignment of the Garden Plus service mark with the

20  Secretary of State for the State of California.

21      10.     Garden Plus was purchased by HomeTeam from Sean McCauley.  For over three

22  years following the sale of Garden Plus to HomeTeam, Sean McCauley continued to work with

23  HomeTeam as a Region Manager.  Sean McCauley left his employment with HomeTeam in

24  January 2008.

25      11.     In January 2008, Sean McCauley purchased from HomeTeam a Sublicensing

26  Agreement that permitted him to use the Garden Plus trademark in three California Counties

27  (hereinafter "Permitted Counties").

28  / / /

AMENDED COMPLAINT                                    CASE NO. CV 09-1158 JSW

12.     Delta also provides pest control and pest extermination services to residences, businesses, and builders, including termite control.  Delta is a competitor of HomeTeam.  David Woodman, Roberto Baron, Michael Faulkenberry, Michael Isham, Seam McCauley, Glen McCauley and Tim Katrones are employees and/or principles of Delta and/or the Garden Plus operation run by Sean McCauley pursuant to the Sublicensing Agreement.

13.     Sean McCauley and his brother Glen McCauley own and operate Delta, which is an independent business entity from Garden Plus and HomeTeam.  Glen McCauley started Delta in February 2008.  On or after the time of its inception, Delta has used the Garden Plus mark and has held itself out and is doing business as Garden Plus in areas including but not limited to Contra Costa County.

14.     Delta's website, "deltapest.com" diverts directly to a Garden Plus website that is owned and operated by Sean McCauley.  Delta also has Garden Plus signs in front of its business in Pittsburg, CA.  Delta lists itself as Garden Plus Co. Inc. in the Bio-Integral Resource Center database.  On other websites, Garden Plus is listed as having its address in Pittsburg, CA, at Delta's address, including "Consumers' Checkbook" at checkbook.org, and on "Merchant Circle" at merchantcircle.com.

15.     Delta, Sean McCauley and Glen McCauley have misappropriated the business identity of Garden Plus, and have, and are, falsely conducting business as Garden Plus, in direct violation of the law and the Sublicensing Agreement between HomeTeam Pest Control and Sean McCauley.

16.     Before his employment ended on August 12, 2008, David Woodman was a pest control technician for HomeTeam.

17.     Before his employment ended on February 29, 2008, Roberto Baron was a pest control technician for HomeTeam.

18.     Before his employment ended on May 21, 2008, Tim Katrones was a service manager for HomeTeam.

19.     Before his employment ended on August 18, 2008, Michael Faulkenberry was a pest control technician for HomeTeam.

1    20.    Before his employment ended on February 27, 2009, Michael Isham was a pest
2  control technician for HomeTeam.

3    21.    Before his employment ended on January 3, 2008, Sean McCauley was a Region
4  Manager for HomeTeam.

5    22.    On June 1, 2008, David Woodman executed an Employment Agreement in
6  connection with his employment with HomeTeam, that includes a "Confidentiality/Non-
7  Solicitation Agreement."  David Woodman had previously executed an Employment Agreement
8  in connection with his employment with HomeTeam, that included a "Confidentiality/Non-
9  Solicitation Agreement" on December 30, 2003.

10    23.    On December 30, 2003, Roberto Baron executed an Employment Agreement in
11  connection with his employment with HomeTeam, that includes a "Confidentiality/Non-
12  Solicitation Agreement."

13    24.    On December 30, 2003, Tim Katrones executed an Employment Agreement in
14  connection with his employment with HomeTeam, that includes a "Confidentiality/Non-
15  Solicitation Agreement."

16    25.    On December 30, 2003, Michael Faulkenberry executed an Employment
17  Agreement in connection with his employment with HomeTeam, that includes a
18  "Confidentiality/Non-Solicitation Agreement."

19    26.    On June 1, 2008, Michael Isham executed an Employment Agreement in
20  connection with his employment with HomeTeam, that includes a "Confidentiality/Non-
21  Solicitation Agreement."

22    27.    Hereinafter, the Woodman, Baron, Faulkenberry, Isham and Katrones Employment
23  Agreements, including Confidentiality/Non-Solicitation Clauses, will be referred to as the
24  "Confidentiality/Non-Solicitation Agreements."

25    28.    Pursuant to their Confidentiality/Non-Solicitation Agreements, Woodman, Baron,
26  Faulkenberry, Isham and Katrones acknowledged that during their employment with HomeTeam,
27  they would learn various confidential trade secrets and information relating to HomeTeam's
28  operations.

1      29.     As part of the Sublicensing Agreement between Sean McCauley and HomeTeam,

2   Sean McCauley and Home Team Pest Defense agreed to a Purchaser Non-Competition

3   Agreement whereby Sean McCauley agreed not to solicit HomeTeam's customers, solicit

4   HomeTeam's employees to terminate their employment or compete with HomeTeam in Arizona,

5   Nevada or California, excluding the three Permitted Counties.

6      30.     The Sublicensing Agreement executed by Sean McCauley states in relevant part as

7   follows:

8              2.   Sublicense.   HomeTeam hereby grants to Sublicensee an
       irrevocable and non-exclusive sublicense (the **"Sublicense"**) to use the
9      Trademark solely in connection with Sublicensee's operation of the
       Business (as defined in the Purchase Agreement) in the Service Area
10     for a period of five (5) years following the Closing Date (hereinafter
       the **"Initial Term"**) . . . HomeTeam will retain all rights to use the
11     Trademark for any other purposes other than the operation of the
       Business in the Service Area. . .

12             6. Enforcement of Agreement.

13             a.      Sublicensee recognizes and acknowledges that
14     HomeTeam will suffer irreparable harm if Sublicensee violates any of
       the terms or provisions of this Agreement. Accordingly, Sublicensee
15     agrees that HomeTeam will be entitled to an injunction restraining
       Sublicensee from interfering with HomeTeams's use of the Trademark
16     in violation of this Agreement, which injunctive relief will be in
       addition to, and not in lieu of, HomeTeam's right to seek all other
17     remedies that HomeTeam may have at law and in equity.

18             b.      Sublicensee acknowledges and agrees that Sublicensee
       is restricted from certain uses of the Trademark pursuant to that certain
19     Non-competition Agreement between HomeTeam and Sublicensee of
       even date herewith.

20

21     31.     The Purchaser Non-Competition Agreement executed by Sean McCauley states in

22   part as follows:

23             2.      Competition.  From the date hereof through January 2, 2013
       (the Non-Compete Period), McCauley agrees that he will not
24     compete with HomeTeam in the Business in the Non-
       Competition Area, directly or indirectly, either through any
25     form of ownership or funding (other than ownership of
       securities of a publicly held corporation of which McCauley
26     owns, or has real or contingent rights to own, less than one
       percent (1%) of any class of outstanding securities), or as a
27     director, officer, principal, agent, employee, employer, adviser,
       consultant, copartner, or in any other individual or
28     representative capacity whatsoever, either for McCauley's own

---

**-6-**

AMENDED COMPLAINT                                           CASE NO. CV 09-1158 JSW

benefit or for the benefit of any other person, firm, corporation, or governmental, private or other entity of whatever kind.

HomeTeam owns and has a valuable property interest in its trade secrets, including without limitations, its list of customers, both residential and commercial and other information that has recognized value and that is not generally available through other sources ("Trade Secrets") and information regarding its various products, services, procedures and systems that is treated as confidential by HomeTeam that does not rise to the level of a Trade Secret ("Confidential Business Information"). McCauley agrees that with respect to information not directly related to the Service Area, he will not disclose, copy or take away any of HomeTeam's Trade Secret or Confidential Business Information, directly or indirectly, or use such information in any way. McCauley further agrees that he will not, directly or indirectly, contact HomeTeam employees for operational knowledge, information or assistance without prior written consent of HomeTeam's President or Division Vice President.

6.   Remedies For Breach Of Agreement.  If McCauley commits a breach of the terms and conditions of this Agreement and McCauley fails to cure such breach prior to the expiration of 10 days after the delivery to McCauley of written notice setting forth in reasonable detail the nature and extent of such breach, HomeTeam may proceed to recover damages through an action at law or in equity; provided, however, that HomeTeam may pursue declaratory relief of injunctive relief, as provided for in Section 5 hereof, concurrently or consecutively, with respect to any breach or threatened breach and the pursuit of such remedy will not be deemed a waiver of any right to pursue any other remedy or damages available to HomeTeam at law or by contract.

32.   The Confidentiality/Non-Solicitation Agreement executed by Woodman and Isham on June 1, 2008 state in part as follows:

For the proper protection of the Company, it is absolutely necessary and essential (which necessity the Employee expressly recognizes) that all matters connected with, arising out of, or pertaining to the business of the Company, its methods and systems, and the names of its customers be kept secret and confidential as goodwill belonging to the Company.  The territory hereinafter set forth in Paragraph 6 has been solicited by the Company through its sales efforts and advertising media, and a valuable and extensive trade has been established thereby at great expense to the Company.  The Employee desires to be employed by the Company within the territory described in paragraph 6.  By virtue of such employment, the Company will impart to the Employee, and the Employee will become possessed of, the knowledge of the Company's confidential information and trade secrets, including, but not limited to, the names and lists of customers within said territory, and of the methods and systems employed by the

Company.  Employee acknowledges that a part of the consideration Employee is providing the Company in exchange for his/her employment and continued employment with the Company is Employee's agreement to maintain the confidentiality of the Company's confidential information and trade secrets, as provided for herein.  The Employee acknowledges and agrees that he/she has voluntarily entered into this Agreement with the Company, fully understands the terms and conditions hereof, and acknowledges the restrictions of this agreement are reasonably necessary for the protection of the business and goodwill of the Company.

. . . .

5.      The Employee distinctly understands and agrees that the nature of the Company's business, customer lists of the Company, any other information relating to the Company's customers that have been obtained or made known to Employee solely as the result of Employee performing his/her services for the Company, information with respect to the personnel, the methods and systems used by the Company in conducting its business, pricing policies, training and education received by the Employee, technical bulletins of the Company, manuals, profit and loss information, and other related internal business information are all of a confidential nature, are valuable assets of the Company, and constitute confidential information and trade secrets (as defined by the Uniform Trade Secrets Act adopted by California).

6.      (a) Employee promises that during his/her employment with the Company, he/she shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, board member, director or in any other individual or representative capacity, engage or attempt to engage in any competitive activity relating to the subject matter of his/her employment with Employer, including, but not limited to, pest control, exterminating, fumigating, and termite control business.

(b) Employee will not engage in competition with the Company, at any time after termination of this agreement, while making use of the Company's confidential information and/or trade secrets, as defined in Paragraph 5 of this agreement.

(c) Employee hereby expressly covenants and agrees that he/she will not, during the term of his/her employment and for a period of eighteen (18) months immediately following termination, for any reason whatsoever, directly or indirectly, for himself/herself or on behalf of, or in conjunction with, any other person, persons, company, partnership or corporation:

(I)      Solicit or attempt to solicit any actual or prospective customers of the Company with whom Employee had "material contact" for the purposes of providing any goods or services to those customers that are competitive with the goods or services provided by the Company to its customers. "Material contact" is agreed to exist between Employee and each actual or prospective customer: (a) with whom the

Employee dealt; (b) whose dealings with the Company were coordinated or supervised by Employee; or (c) about whom Employee obtained confidential information in the ordinary course of business on a result of such Employee's association with the Company;

(ii)    Recruit, or attempt to recruit, induce, any employee of the Company who is employed with Employer in the territory listed herein, to terminate or cease employment with the Company and/or to breach his/her employment agreement with the Company. Employee agrees that the Company has invested substantial time and effort in assembling its present personnel in the territory below;

(iii)   The Territory shall include the following listed counties where the branch, in which Employee is assigned, performs services on behalf of the Company:

THE COUNTIES OF ALAMEDA, CALAVERAS, CONTRA COSTA, MARIN, MERCED, SACRAMENTO, SAN FRANCISCO, SAN JOAQUIN, SAN MATEO, SANTA CLARA, SANTA CRUZ, SOLANO, STANISLAUS, AND TUOLUMNE, ALL IN THE STATE OF CALIFORNIA.

. . . .

9.    Employee agrees, upon termination of employment, to return to the Company all property belonging to the Company, including but not limited to, the confidential information and trade secrets referred to in Paragraph 5 of this agreement, and will not make copies of such information or materials, will not furnish such information or materials to anyone other than those within the Company authorized to receive such information or materials, and will not use or disclose such information or materials without first obtaining written authorization from the Company.

. . . .

14.   Employee agrees that breach of the restrictive covenants in this agreement will irreparably harm Company for which Company may not have an adequate remedy at law.  As such, Employee agrees Company shall be entitled to any proper injunction, including but not limited to temporary, preliminary, final injunctions, temporary restraining orders, and temporary protective orders, to enforce said covenants in the event of breach or threatened breach by Employee, in addition to any other remedies available to Employer at law or in equity.  In the event the Company institutes legal proceedings to enforce this Agreement, ROLLINS HT is entitled to recover all costs and expenses, including reasonable attorney fees, associated with successfully enforcing this Agreement through trial and any subsequent appeal.

/ / /

33.   The Confidentiality/Non-Solicitation Agreement executed by Baron, Faulkenberry, Katrones and Woodman on December 30, 2003 states in relevant part as follows:

> Employee will become personally acquainted with the Company customers and the Company will provide Employee various Trade Secrets and/or Confidential Business Information immediately upon execution of the Agreement as well as hereafter throughout Employee's employment. It is important that each employee recognize and acknowledge that the Trade Secrets and Confidential Business Information, as they may exist from time to time, are valuable, special and unique assets of the Company and that the Company would sustain great loss if such Trade Secrets or Confidential Business Information were improperly disclosed or misappropriated.
>
> .    .    .
>
> Employee will be given various Trade Secrets and Confidential Business Information of the Company immediately upon execution of this Agreement as well as hereafter throughout Employee's employment.  In return, Employee agrees that Employee will not disclose, copy or take away any of the Trade Secrets or Confidential Business Information, directly or indirectly, or use such information in any way, either during the term of Employee's employment by the Company or at any time thereafter, except as required in the ordinary course of Employee's employment for the benefit of the Company.
>
> .    .    .
>
> For a period of one year following the termination of Employee's employment with the Company, Employee will not directly or indirectly solicit business from, call on or perform services for any person or entity that was, at the time of such termination, a customer of the Company.
>
> .    .    .
>
> Employee acknowledges that these restrictions will not prevent him from obtaining gainful employment in Employee's occupation or field of expertise or cause him undue hardship; that there are numerous other employment and business opportunities available to him that are not affected by these restrictions; and that Employee's ability to earn a livelihood without violating such restrictions is a material condition to employment with the Company.
>
> .    .    .
>
> E.    The parties have attempted to limit Employee's right to the Company's right to use the Company's Trade Secrets/Confidential Business Information, and to limit Employee's right to compete with the Company and solicit employees or customers only to the extend necessary to protect the Company from unfair competition.  However, should a court of competent jurisdiction determine that the scope of the covenants contained in Paragraphs B and C exceed the maximum restrictiveness such court deems reasonable and enforceable, the parties intend that the court should reform, modify and enforce the provision to such narrower scope as it determines to be reasonable and enforceable under the circumstances existing at that time
>
> .    .    .

1

2

3

4

> In the event of a breach or threatened breach by Employee of any provision of this Agreement, the damages that the Company might suffer would be difficult or impossible to measure and, therefore, the Company shall be entitled to an injunction restraining Employee from (I) using or disclosing any Trade Secret(s) and/or Confidential Business Information, and (ii) soliciting the Company's employees and customers in violation of this Agreement.

5       34.    In executing the Sublicensing Agreement and Purchaser Non-Competition

6   Agreement, Sean McCauley acknowledged that HomeTeam's confidential material is not publicly

7   available and that HomeTeam developed, acquired and/or compiled such information at its great

8   effort and expense.

9       35.    In executing the Confidentiality / Non-Solicitation Agreements, Woodman, Baron,

10  Isham, Faulkenberry and Katrones each acknowledged that HomeTeam's confidential material is

11  not publicly available and that HomeTeam developed, acquired and/or compiled such information

12  at its great effort and expense.

13      36.    By executing the Confidentiality/Non-Solicitation Agreements, Woodman, Baron,

14  Isham, Faulkenberry and Katrones each agreed that any use of the confidential information by

15  them, other than in connection with HomeTeam's business, would be highly detrimental to the

16  business of HomeTeam, and may result in serious loss of business and pecuniary damage to

17  HomeTeam.

18      37.    By executing the Sublicensing Agreement and Purchaser Non-Competition

19  Agreement , Sean McCauley agreed that any use of the confidential information by him, other

20  than in the three Permitted Counties, would be highly detrimental to the business of HomeTeam,

21  and may result in serious loss of business and pecuniary damage to HomeTeam.

22      38.    The Confidentiality / Non-Solicitation Agreements provide that Woodman, Baron,

23  Faulkenberry, Isham and Katrones may not solicit HomeTeam's customers for a period of twelve

24  months or more from the date they cease working for HomeTeam.

25      39.    Sometime after August 12, 2008, Woodman began working for Delta.  Upon

26  information and belief, Delta, Glenn McCauley and Sean McCauley knew that Woodman signed

27  the Confidentiality / Non-Solicitation Agreement while working for HomeTeam and that

28  Woodman had access to trade secret information while working for HomeTeam.

40.     Sometime after February 29, 2008, Baron began working for Delta.  Upon information and belief, Delta, Glenn McCauley and Sean McCauley knew that Baron signed the Confidentiality / Non-Solicitation Agreement while working for HomeTeam and that Baron had access to trade secret information while working for HomeTeam.

41.     Sometime after May 21, 2008, Katrones began working for Delta.  Upon information and belief, Delta, Glenn McCauley and Sean McCauley knew that Katrones signed the Confidentiality / Non-Solicitation Agreement while working for HomeTeam and that Katrones had access to trade secret information while working for HomeTeam.

42.     Sometime after August 18, 2008,  Faulkenberry began working for Delta.  Upon information and belief, Delta, Glenn McCauley and Sean McCauley knew that  Faulkenberry signed the Confidentiality / Non-Solicitation Agreement while working for HomeTeam and that Faulkenberry had access to trade secret information while working for HomeTeam.

43.     Sometime after February 27, 2009, Isham began working for Delta.  Upon information and belief, Delta, Glenn McCauley and Sean McCauley knew that Isham signed the Confidentiality / Non-Solicitation Agreement while working for HomeTeam and that Isham had access to trade secret information while working for HomeTeam.

44.     Delta, Glenn McCauley, Sean McCauley, Woodman, Baron, Faulkenberry, Isham and Katrones individually or through their agents have solicited, and upon information and belief currently are soliciting, HomeTeam's customers in California to stop using HomeTeam and to start using Delta and/or Garden Plus for their pest control, pest extermination, and termite control needs.

45.     Delta, Glenn McCauley, Sean McCauley, Woodman, Baron, Faulkenberry, Isham and Katrones are using HomeTeam's confidential and trade secret information to solicit HomeTeam's customers in California and to gain a competitive advantage over HomeTeam.

46.     Through their solicitations and use of HomeTeam's confidential and trade secret information, Delta, Glenn McCauley, Sean McCauley, Woodman, Baron, Faulkenberry, Isham and Katrones have convinced multiple HomeTeam customers in California to stop using HomeTeam's services and to start using Delta and/or Garden Plus' services.

-12-

47.     As a direct and proximate result of the acts and omissions alleged herein, it has become necessary for HomeTeam to retain the services of attorneys to prosecute its claims, and HomeTeam is therefore entitled, pursuant to the Confidentiality / Non-Solicitation Agreements of the Employment Agreements, the Purchase and Sale Agreement and/or applicable law, to recover its attorneys' fees and costs incurred herein.

**FIRST CLAIM**

**(Damages & Injunctive Relief - Misappropriation of Trade Secrets - All Defendants)**

**(Uniform Trade Secrets Act, CA Civil Code § 3426)**

48.     HomeTeam realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

49.     While employed at HomeTeam, Woodman, Baron, Faulkenberry, Isham, Katrones and Sean McCauley had access to various trade secrets and confidential business information including, but not limited to, HomeTeam's customer lists, methods of operations, pricing methods, specific labor cost information, and customer information relating to, among other things, customers' specific needs, customers' contact people, job detail, labor force per job, and profit margins.

50.     The confidential information and trade secrets described in the immediately preceding paragraph are not known outside of HomeTeam, and HomeTeam has taken precautions to protect this information.  HomeTeam derived independent economic value from the information because this information was not generally known to the public or to other persons who could obtain economic value from its disclosure or use.  HomeTeam has invested money in developing  this information, the information has value to HomeTeam, and it would be difficult (if not impossible) for others to acquire and duplicate this information.

51.     Woodman, Baron, Faulkenberry, Isham, Katrones and Sean McCauley have all signed agreements acknowledging that this information is a trade secret, and promising to keep the information secret and to not disclose the information, and promising to not solicit HomeTeam's customers for twelve or more months after their employment with HomeTeam ended for any reason.

52.   The Confidentiality / Non-Solicitation Agreements executed by Woodman, Baron, Faulkenberry, Isham, and Katrones expressly provide that HomeTeam is entitled to injunctive relief restraining them from using or disclosing any trade secret(s) and/or confidential business information.

53.   The  Sublicensing Agreement executed by Sean McCauley provides that HomeTeam would suffer irreparable harm if he violated any of the terms or provisions of the Agreement.  Further, Sean McCauley agreed that HomeTeam would be entitled to an injunction restraining him from interfering with HomeTeams's use of the Trademark in violation of the Sublicensing Agreement.

54.   Defendants, and each of, them, have misappropriated by wrongful acquisition or wrongful disclosure, for their own use and benefit, HomeTeam's trade secrets, in violation of California Civil Code § 3426 *et seq*.

55.   Defendants are also using trade secret information to solicit HomeTeam's customers.

56.   Defendants, and each of them, have profited monetarily from the use of HomeTeam's trade secrets.

57.   In connection with Defendants' solicitation of HomeTeam's customers, Woodman, Baron, Faulkenberry, Isham and Katrones cannot avoid using their knowledge of, among other things, HomeTeam's: (1) methods of operations, (2) pricing methods, (3) profit/ loss statements; (4) negotiation strategies, (5) job bidding, (6) plans for future business; and (7) customer information relating to, among other things,  customers' specific needs, customers' contact people, job detail, labor force per job, and profit margins.

58.   Defendants' improper use of HomeTeam's trade secrets has caused, and will continue to cause, irreparable injury to HomeTeam for which HomeTeam has no adequate remedy at law.

59.    HomeTeam is entitled, therefore, to preliminary and permanent injunctive relief pursuant to California Civil Code § 3426.2.

/ / /

60.    HomeTeam is further entitled to equitable relief in the nature of imposition of a constructive trust on, and disgorgement of, profits and other financial gains realized by Defendants from their misappropriation of trade secrets, in an amount not yet ascertained and probably not ascertainable, except on the basis of defendants' profits and savings, and the salaries, bonuses and commissions of David Woodman, Roberto Baron, Tim Katrones, Michael Faulkenberry and Michael Isham.

61.    Defendants' misappropriation of HomeTeam's trade secrets was willful and malicious, entitling it to exemplary damages in an amount equal to the amount of monies disgorged by Defendants.

62.    As a direct and proximate result of Defendants' acts and omissions as set forth herein, HomeTeam has been injured in an amount in excess of $75,000.

## SECOND CLAIM

### (Damages & Injunctive Relief - Unfair Competition/Misappropriation of Business Value - All Defendants)

63.    HomeTeam realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

64.    Delta, Sean McCauley and Glen McCauley hired Woodman, Baron, Faulkenberry, Isham and Katrones with the improper intent of acquiring HomeTeam's trade secrets.

65.    Sean McCauley, Woodman, Baron, Faulkenberry, Isham and Katrones have and continue to solicit HomeTeam's customers.

66.    As a direct and proximate result of the acts of Sean McCauley, Woodman, Baron, Faulkenberry, Isham and Katrones, Defendants solicited HomeTeam's customers on behalf of Delta, Sean McCauley and Glen McCauley.

67.    As a direct and proximate result of the acts of Sean McCauley, Woodman, Baron, Faulkenberry, Isham and Katrones, each has transferred trade secrets and confidential information, including HomeTeam-taught know-how and business value of HomeTeam to Delta, Sean McCauley and Glen McCauley.

68.     Defendants, by the wrongful acts alleged herein, have unfairly competed against HomeTeam by unlawfully obtaining and using HomeTeam's trade secrets and confidential information, and by interfering with HomeTeam's relations with its customers and employees, thereby engaging in unfair, unlawful, and fraudulent business practices.

69.     These acts have unlawfully, unfairly, and unjustly enriched Defendants.

70.     Unless enjoined, Defendants' acts have caused, and will continue to cause, irreparable injury to HomeTeam for which HomeTeam has no adequate remedy at law.

71.     HomeTeam is entitled to injunctive relief against continuing unfair competition and misappropriation of business value and to the equitable remedy of disgorgement of this unlawful, and unjust enrichment.

72.     Defendants' actions were willful, oppressive malicious, and fraudulent.  Therefore, HomeTeam is entitled to punitive and exemplary damages.

73.     As a direct and proximate result of Defendants' acts and omissions as set forth herein, HomeTeam has been injured in an amount in excess of $75,000.

### THIRD CLAIM

**(Damages & Injunctive Relief - Breach of Fiduciary Duty - Sean McCauley)**

74.     HomeTeam realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

75.     Sean McCauley owed HomeTeam a fiduciary duty to protect HomeTeam's trade secrets and confidential information.

76.     Sean McCauley has breached his fiduciary duties to HomeTeam by disclosing to Defendants, and using for Defendants' benefit, HomeTeam's trade secrets and confidential information through, including but not limited to, soliciting HomeTeam's customers.

77.     Unless enjoined by this Court, the foregoing breaches of fiduciary duty will continue which has caused, and will continue to cause, irreparable injury to HomeTeam for which HomeTeam has no adequate remedy at law.

78.     HomeTeam is entitled to injunctive relief against continuing breaches of fiduciary duty.

AMENDED COMPLAINT                    CASE NO. CV 09-1158 JSW

79.   By reason of his breach of fiduciary duties, Sean McCauley has been unjustly enriched by salaries, bonuses, profits and commissions.

80.   HomeTeam is entitled to the equitable remedy of disgorgement of this unlawful, and unjust enrichment.

81.   Defendant's actions were willful, oppressive malicious, and fraudulent.  Therefore, HomeTeam is entitled to punitive and exemplary damages.

82.   As a direct and proximate result of Defendant's acts and omissions as set forth herein, HomeTeam has been injured in an amount in excess of $75,000.

**FOURTH CLAIM**

**(Damages & Injunctive Relief - Breach of the Confidentiality/Non-Solicitation Agreements - Woodman, Baron, Faulkenberry, Isham and Katrones )**

83.   HomeTeam realleges and incorporates by reference each and every  allegation contained above as though fully set forth herein.

84.   Woodman, Baron, Faulkenberry, Isham and Katrones each breached the Confidentiality / Non-Solicitation Agreements they executed by, among other things, disclosing and using HomeTeam's trade secrets and confidential information, and soliciting HomeTeam's customers and employees.

85.   Pursuant to the Agreements, HomeTeam is entitled to an injunction restraining Employee from (I) using or disclosing any Trade Secret(s) and/or Confidential Business Information, and (ii) soliciting the Company's employees and customers in violation of this Agreement.

86.   Unless enjoined by this Court, Woodman, Baron, Faulkenberry, Isham and Katrones will continue to breach the Confidentiality / Non-Solicitation Agreements which has caused, and will continue to cause, irreparable injury to HomeTeam for which HomeTeam has no adequate remedy at law.

87.   HomeTeam is entitled to injunctive relief against further breaches of the Confidentiality / Non-Solicitation Agreements and to the equitable remedy of disgorgement to the extent defendants profited from their breaches.

**-17-**

1    88.    Pursuant to the Agreements, HomeTeam is entitled to its attorneys' fees for

2  enforcement of the Confidentiality / Non-Solicitation Agreements.

3    89.    As a direct and proximate result of the acts and omissions of defendants as set forth

4  herein, HomeTeam has been injured in an amount in excess of $75,000.

5

6                              **FIFTH CLAIM**

7              **(Damages & Injunctive Relief - Tortious Interference with
               Customer Relationships - All Defendants)**

8    90.    HomeTeam realleges and incorporates herein by reference each and every

9  allegation contained above as though fully set forth herein.

10   91.    Defendants, and each of them, were at all times aware of HomeTeam's

11  relationships with its customers.

12   92.    Defendants, using improper and illegal means, became aware of these relationships

13  and of the prospective advantage to be gained by each of them as a result of soliciting

14  HomeTeam's customers.

15   93.    Defendants, and each of them, using improper means, including wrongful

16  disclosure and use of trade secrets and confidential information, misappropriation of trade secrets

17  and confidential information, as well as breaching the Confidentiality / Non-Solicitation

18  Agreements and their fiduciary duties, intentionally and unjustifiably attempted to induce, and did

19  in fact induce, customers to cancel their business relationship with HomeTeam and enter into

20  business relationships with defendants.  HomeTeam's advantageous business relationship with

21  these customers has been and will in the future be substantially and irrevocably harmed.

22   94.    Unless enjoined, Defendants' intentional interference with HomeTeam's business

23  relations have caused, and will continue to cause, irreparable injury to HomeTeam for which

24  HomeTeam has no adequate remedy at law.

25   95.    HomeTeam is entitled to injunctive relief against Defendants' intentional

26  interference with HomeTeam's business relations.

27   96.    As a proximate result of this wrongful interference, HomeTeam has been damaged

28  in an amount not yet ascertained, and probably not ascertainable, except on the basis of

AMENDED COMPLAINT                                    CASE NO. CV 09-1158 JSW

1   Defendants profits and savings and the salaries, bonuses and commissions earned while working

2   for Defendants.

3           97.     HomeTeam is entitled to the equitable remedy of disgorgement, as well as other

4   injunctive relief.

5           98.     Defendants' actions were willful, oppressive, malicious, and fraudulent.  Therefore,

6   HomeTeam is entitled to exemplary and punitive damages.

7           99.     As a direct and proximate result of Defendants' acts and omissions as set forth

8   herein, HomeTeam has been injured in an amount in excess of $75,000.

9                                   **SIXTH CLAIM**

10          **(Damages & Injunctive Relief - Breach of Sublicensing/Purchaser
            Non-Competition  Agreements - Sean McCauley)**

11

12          100.    HomeTeam realleges and incorporates herein by reference each and

13  every allegation contained above as though fully set forth herein.

14          101.    In January 2008, Sean McCauley purchased from HomeTeam a Sublicensing

15  Agreement that permitted him to use the Garden Plus trademark in the three Permitted Counties in

16  California.  Pursuant to that purchase, Sean McCauley and HomeTeam executed a Sublicensing

17  Agreement and Purchaser Non-Competition Agreement.

18          102.    Sean McCauley breached theses Agreements by using the Garden Plus mark

19  outside of the agreed upon service area, by failing to notify HomeTeam of infringement, by

20  improperly using HomeTeam's trade secrets and confidential business information, and by

21  contacting HomeTeam employees for operational knowledge, information or assistance without

22  prior written consent.

23          103.    In the  Sublicensing Agreement Sean McCauley agreed and acknowledged that

24  HomeTeam would suffer irreparable harm if he violated any of the terms or provisions of the

25  Agreement.  Further, Sean McCauley agreed that HomeTeam would be entitled to an injunction

26  restraining him from interfering with HomeTeams's use of the Trademark in violation of the

27  Sublicensing Agreement.

28  / / /

1    104.    Unless enjoined, Sean McCauley's acts have caused, and will continue to cause,

2  irreparable injury to HomeTeam for which HomeTeam has no adequate remedy at law.

3    105.    HomeTeam is entitled to injunctive relief against continuing breaches of the

4  Sublicensing Agreement and Purchaser Non-Competition Agreement.

5    106.    As a proximate result of this breach, HomeTeam has been damaged in an amount

6  not yet ascertained, and probably not ascertainable, except on the basis of Sean McCauley's profits

7  and savings and the salaries, bonuses and commissions he earned from those breaches.

8    107.    HomeTeam is entitled to the equitable remedy of disgorgement, as well as other

9  injunctive relief.

10    108.    As a direct and proximate result of Defendants' acts and omissions as set forth

11  herein, HomeTeam has been injured in an amount in excess of $75,000.

12                              **SEVENTH CLAIM**

13  **(Damages & Injunctive Relief - Common Law Trademark Infringement -**
   **Delta, Sean McCauley and Glen McCauley)**

14

15    109.    HomeTeam realleges and incorporates herein by reference each and every

16  allegation contained above as though fully set forth herein.

17    110.    HomeTeam through its parent corporation owns Garden Plus and has a license to

18  use the Garden Plus mark.

19    111.    HomeTeam has recorded its assignment of the Garden Plus service mark with the

20  Secretary of State for the State of California.

21    112.    HomeTeam has used and continues to use the name "Garden Plus" since 2004.

22    113.    HomeTeam has common law trademark rights as to the use of the name "Garden

23  Plus."

24    114.    Delta's, Sean McCauley's and Glen McCauley's past and present use of the same

25  "Garden Plus" mark has caused  actual confusion and/or a likelihood of confusion among

26  consumers as to the source, quality, and nature of their goods and services.

27    115.    Delta's, Sean McCauley's and Glen McCauley's use of the name "Garden Plus"

28  for pest control services has and will continue to cause irreparable injury to plaintiff, including

1 injury to business reputation and dilution of the distinctive quality of plaintiff's trademark.

2 Unless restrained by this Court, Delta's, Sean McCauley's and Glen McCauley's ongoing use of

3 the name "Garden Plus" will engender a multiplicity of judicial proceedings, and monetary

4 compensation will not afford plaintiff adequate relief for the damage to its trademark in the public

5 perception.

6       116.   Unless enjoined, Delta's, Sean McCauley's and Glen McCauley's acts have

7 caused, and will continue to cause, irreparable injury to HomeTeam for which HomeTeam has no

8 adequate remedy at law.

9       117.   HomeTeam is entitled to injunctive relief against continuing trademark

10 infringement.

11       118.   Plaintiff is further entitled to recover from defendants the damages, including

12 attorneys' fees, it has sustained and will sustain, and any gains, profits, and advantages obtained

13 by defendants as a result of defendants' acts of infringement alleged above.  At present, the

14 amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiff.

15       119.   As a direct and proximate result of Defendants' acts and omissions as set forth

16 herein, HomeTeam has been injured in an amount in excess of $75,000.

17 <center>**EIGHTH CLAIM**</center>

18 <center>**(Damages & Injunctive Relief Violation of Lanham Act, 15. U.S.C. § 1125**
**- - Delta, Sean McCauley and Glen McCauley)**</center>

19

20       120.   HomeTeam realleges and incorporates herein by reference each and every

21 allegation contained above as though fully set forth herein.

22       121.   The use by defendants of the trademark "Garden Plus" on their infringing services

23 and goods in commerce constitutes utilizing false descriptions and representations in commerce.

24       122.   The use by defendants of the trademark "Garden Plus" is likely to cause confusion,

25 or to cause mistake, or to deceive as to the affiliation, connection, or association of defendants

26 with Garden Plus and as to the origin, sponsorship, or approval of their goods, services, and

27 commercial activities.

28 / / /

<center>**-21-**</center>

123.   This imitation, copying and unauthorized use of plaintiff's trademark has caused and will continue to cause irreparable injury to plaintiff, including injury to business reputation and dilution of the distinctive quality of plaintiff's trademark.

124.   By reason of the foregoing, defendants have violated and are continuing to violate 15 U.S.C. § 1125.

125.   Plaintiff is entitled to an injunction restraining defendants, their officers, agents, employees, successors, assigns, and all persons acting in concert with them, from engaging in any further acts in violation of 15 U.S.C. § 1125.

126.   Plaintiff is further entitled to recover from defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits, and advantages obtained by defendants as a result of defendants' acts of infringement alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiff.

127.   As a direct and proximate result of Defendants' acts and omissions as set forth herein, HomeTeam has been injured in an amount in excess of $75,000.

### NINTH CLAIM

### (Unjust Enrichment - All Defendants)

128.   HomeTeam realleges and incorporates herein by reference each and every allegation contained above as though fully set forth herein.

129.   Delta, Sean and Glen McCauley have, by employing Woodman, Baron, Faulkenberry, Isham and Katrones, gained the advantage of the recruitment, job training, and instruction provided by HomeTeam, and Woodman, Baron, Faulkenberry, Isham and Katrones each have improperly used HomeTeam's proprietary and confidential information and trade secrets obtained by HomeTeam's former employees while in the employ of HomeTeam.

130.   As a result of these actions, Defendants have been unjustly enriched in an amount not yet ascertained, and probably not ascertainable, except on the basis of Defendants' profits and savings. HomeTeam is entitled to equitable restitution of the amount by which Defendants have been unjustly enriched.

/ / /

1    131.    As a result of these actions, Woodman, Baron, Faulkenberry, Isham and Katrones

2   have been unjustly enriched in an amount not yet ascertained, and probably not ascertainable,

3   except on the basis of the salaries, bonuses and commissions Woodman, Baron, Faulkenberry,

4   Isham and Katrones earned while working for Delta, Sean and Glen McCauley.  HomeTeam is

5   entitled to equitable restitution of the amount by which Woodman, Baron, Faulkenberry, Isham

6   and Katrones have been unjustly enriched.

7    132.    As a direct and proximate result of Defendants' acts and omissions as set forth

8   herein, HomeTeam has been injured in an amount in excess of $75,000.

9

10    **WHEREFOR,** HomeTeam prays for judgment against Defendants, and each of them, as

11   follows.

12    1.    For a preliminary injunction prohibiting:

13       a.    Defendants from soliciting any of HomeTeam's customers;

14       b.    Defendants from using or revealing to anyone any of HomeTeam's trade

15          secrets or confidential information;

16       c.    Defendants from using the Garden Plus mark outside of the three Permitted

17          Counties.

18    2.    For a permanent injunction directed to Defendants identical to the relief described

19   in subparagraph (l) above;

20    3.    For a constructive trust and equitable lien to be placed on all such profits, savings

21   and unjust enrichment of Defendants and all assets derived therefrom;

22    4.    For disgorgement against Delta, Glen McCauley and Sean McCauley of savings

23   and profits, and against David Woodman, Roberto Baron, Michael Isham, Michael Faulkenberry

24   and Tim Katrones of salary, bonuses and commissions obtained by them at the expense of

25   HomeTeam in an amount according to proof at trial;

26    5.    For an accounting by all Defendants of all profits, savings, salaries, bonuses and

27   unjust enrichment obtained by them at the expense of HomeTeam;

28   / / /

**-23-**

AMENDED COMPLAINT                                    CASE NO. CV 09-1158 JSW

1       6.     For compensatory damages in an amount to be determined at trial, including

2   general, special, consequential and resulting damages;

3       7.     For punitive and exemplary damages of no less than the amount of disgorgement;

4       8.     For prejudgment interest;

5       9.     For reasonable attorneys' fees;

6       10.    For the costs and expenses incurred herein; and

7       11.    For such further relief as the Court deems just and proper under the circumstances.

8

9                   RIMAC MARTIN

10                  A Professional Corporation

11

DATED:  April 6, 2009      By:  /s ANNA M. MARTIN

12                  ANNA M. MARTIN
                    Attorneys for Plaintiff

13                  HOMETEAM PEST DEFENSE, INC.

14                DEMAND FOR JURY TRIAL

15       Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of

16  Civil Procedure.

17                  RIMAC MARTIN
                    A Professional Corporation

18

19

DATED:  April 6, 2009      By:  /s ANNA M. MARTIN

20                  ANNA M. MARTIN
                    Attorneys for Plaintiff

21                  HOMETEAM PEST DEFENSE, INC.

22

23

24

25

26

27

28

AMENDED COMPLAINT                CASE NO. CV 09-1158 JSW